2003-NMCA-053

65 P.3d 1095

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joe BARBER, Defendant–Appellant.**

No. 22,706.

Court of Appeals of New Mexico.

Feb. 4, 2003.

Certiorari Granted, No. 27,938,
March 20, 2003.

Patricia A. Madrid, Attorney General, San-
ta Fe, NM, M. Anne Kelly, Assistant Attor-
ney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

CASTILLO, Judge.

{1} Defendant Joe Barber appeals his conviction of possession of a controlled substance with intent to distribute. Defendant advances four arguments on appeal: (1) fundamental error in the trial counsel's failure to instruct the jury on the legal definition of possession; (2) ineffective assistance of counsel; (3) abuse of discretion in admitting evidence of Defendant's prior conviction for distribution of marijuana; and (4) insufficient evidence. We affirm Defendant's conviction.

**BACKGROUND**

{2} In response to an anonymous tip, Sergeant Kim and Officer Vardeman of the Lovington Police Department traveled to a local motel in search of a specified vehicle. The officers found the vehicle surrounded by Audrey Watson and D'Lisa Dudley, and their respective husbands, Dale Patton and Bobby Mane, Jr. Upon observing the officers, the two women began walking quickly toward a motel room. Just as they had entered the room, Sergeant Kim asked the women to stop, and ordered them to step outside. When the women stepped outside the room, Sergeant Kim observed two boys in the room. He asked if there were any other people in the room. One boy answered that Defendant was in the bathroom. The bathroom door was shut. One of the boys told Defendant that "the cops are here." Sergeant Kim called to Defendant by name and at the same time Defendant exited the bathroom. The officers gathered Defendant, the two women, and their husbands by the car, patted them down for weapons, and found none.

{3} Ms. Watson told the officers that her husband, Dale Patton, had rented the motel room for her and her children and they had been there for two or three days. Upon discovering that the room was registered to Ms. Watson, the sergeant explained to her why the police came to the motel, then obtained her consent to search the room. Ms.

Watson told Officer Kim that there were syringes in the room because she was participating in the needle exchange program. She also told him "there would possibly be some narcotics in the room but she was not sure." Several more officers arrived, and they searched the room where they found several syringes in Ms. Watson's purse and in Ms. Dudley's jacket. In the bathroom sitting on the back of the toilet, the officers found several baggies, some of which contained a cream-colored powder and rock-like substance later identified as methamphetamine, baggy corners, scales, a razor blade, a folding mirror, a piece of foil from a cigarette pack, and a folded business card with the powdery substance in the crease and some writing on one side. Additional business cards, and a calendar page with names, dates, and monetary amounts handwritten on them similar to the markings on the folded business card, were found in Defendant's wallet.

{4} Agent Alexander, called to assist in the search, testified to his expert opinion that the notations found on the business cards and the calendar page likely described a series of drug transactions because the numbers were consistent with the street level sale and distribution of methamphetamine. He further explained that the paraphernalia he found on the toilet, the amount of drugs, and the manner in which they were packaged were also consistent with the sale and distribution of methamphetamine. Defendant denied that the drugs in the bathroom belonged to him and denied that he was involved in any drug transactions. Not considering the other people within the vicinity to be suspects, the officers arrested Defendant on the charge of distribution of a controlled substance.

{5} Ms. Watson testified that Defendant was a friend who was dropped off at the motel while she was gone; he came to her room to take a shower because the water had been turned off at his trailer for water line repair. Ms. Watson also stated that Defendant was in the bathroom for approximately five minutes before the officers arrived. Sergeant Kim testified that when Defendant exited the bathroom, he was fully clothed. Officer Campbell, who was called to assist in

the search, testified that while he searched the bathroom, he did not find any wet towels or other indication that a shower was recently taken.

{6} At trial, the defense argued that there remained reasonable doubt as to the owner of the drugs found in the motel bathroom, and that the registered occupant and visitors were all admitted methamphetamine users, who were wrongly excluded from the police investigation. The jury was instructed on all elements of the charge of possession with intent to distribute a controlled substance and found Defendant guilty, in violation of NMSA 1978, § 30–31–22 (1990).

## DISCUSSION

### I. Jury Instructions

{7} Defendant argues that the trial court's failure to give an instruction defining "possession" was fundamental error. The jury instruction given read as follows:

> For you to find the defendant guilty of Possession with Intent to Distribute, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant had Methamphetamine in his possession;
> 2. The defendant knew it was Methamphetamine;
> 3. The defendant intended to transfer it to another;
> 4. This happened in New Mexico on or about the 4th day of January, 2001.

See UJI 14–3104 NMRA 2003. On appeal, Defendant argues that the jury should have been given the following definition: "[a] person is in possession [of] [methamphetamine] when he knows it is on his person or in his presence, and he exercises control over it," qualified by the instruction that "[a] person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession." UJI 14–3130 NMRA 2003.

{8} Defendant did not tender this instruction or object to the instruction given at trial. Because Defendant has not preserved this claim of error, he argues reversal based on fundamental error. See Rule 12–216(B)(2) NMRA 2003; State v. Sosa, 1997–

NMSC–032, ¶¶ 24–25, 123 N.M. 564, 943 P.2d 1017. This Court will apply fundamental error sparingly to avoid a miscarriage of justice. State v. Reyes, 2002–NMSC–024, ¶ 42, 132 N.M. 576, 52 P.3d 948. Fundamental error exists when the " 'defendant's innocence appears indisputable or if the question of his [or her] guilt is so doubtful that it would shock the conscience to permit the conviction to stand.' " Id. (citation omitted) (alteration in original). Where there is " 'substantial evidence ... to support the verdict of the jury, we will not resort to fundamental error.' " See id. (quoting State v. Rodriguez, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970)).

{9} Defendant cites to a number of cases wherein the failure to give a definitional instruction did not result in fundamental error. See e.g., State v. Gonzales, 112 N.M. 544, 817 P.2d 1186 (1991); State v. Crain, 1997–NMCA–101, ¶¶ 10–12, 124 N.M. 84, 946 P.2d 1095. Defendant argues that, in this case, the possession instruction addresses a "critical determination akin to a missing elements instruction," and therefore its absence is fundamental error. State v. Mascarenas, 2000–NMSC–017, ¶ 20, 129 N.M. 230, 4 P.3d 1221.

{10} In Mascarenas, the Supreme Court found fundamental error where the instruction given failed to adequately define the requisite culpable mental state for criminal negligent child abuse by including language more comparable to the civil negligence standard. Id. ¶¶ 9, 13. Disputed in Mascarenas was the force and frequency with which the defendant shook a six-month old baby, and the extent of his knowledge that his actions could result in injuries associated with shaken baby syndrome, which ultimately caused the child's death. Id. ¶¶ 1, 15. The Court reasoned that, because it was central to Mascarenas's defense theory that he did not know the risks associated with shaken baby syndrome, the language ambiguously or imprecisely defining criminal negligence was "akin to a missing elements instruction" and created a distinct possibility that the jury was misdirected and confused about what conduct was criminalized. Id. ¶¶ 13, 20–21. However, unlike the instruc-

tions given in *Mascarenas,* no instruction was given in this case that misstated the definition. We agree with the line of cases holding generally that absent objection by defendant, failure to instruct on a definition contained in a Use Note, does not elevate the definition to an essential element and failure to instruct on the definition is not fundamental error. *See State v. Doe,* 100 N.M. 481, 483, 672 P.2d 654, 657 (1983); *State v. Padilla,* 90 N.M. 481, 482, 565 P.2d 352, 353 (1977).

■ {11} Defendant further argues that the possibility of jury confusion was heightened by the common misconception of the legal meaning of possession. Essentially, Defendant argues that non-lawyers do not understand "possession" to involve the power to control. In support of his assertion, Defendant cites only to a 1937 Alabama case, *Hendley v. First Nat'l Bank of Huntsville,* 235 Ala. 664, 180 So. 667 (1937). We are not persuaded that this is a common misunderstanding, nor are we persuaded that any misunderstanding, even if there were one, inevitably led the jury to convict Defendant. We believe Defendant's reliance on *Mascarenas* is without merit.

## II. Ineffective Assistance of Counsel

■ {12} Defendant contends that his trial counsel provided ineffective assistance in failing to tender a jury instruction on the definition of possession. In order to establish a claim of ineffective assistance of counsel, a defendant must show both that his or her attorney failed to exercise the skill of a reasonably competent attorney and that the defendant's case was prejudiced thereby. *Lytle v. Jordan,* 2001–NMSC–016, ¶ 25, 130 N.M. 198, 22 P.3d 666 (applying the test from *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The defense theory articulated throughout the trial was that Defendant did not possess the drugs or attempt to hide or exercise control over them when the police arrived because he was not the owner of the drugs. Defendant had and took the opportunity to present that defense to the jury through testimony and argument, and the theory of his defense was sufficiently before the jury giving the jury an understanding of the defense. Thus,

we reject Defendant's claim of ineffective assistance of counsel, because Defendant was not prejudiced by the failure of his attorney to tender the definitional instruction. *See Lytle,* 2001–NMSC–016, ¶¶ 25, 41, 130 N.M. 198, 22 P.3d 666; *cf. State v. Talley,* 103 N.M. 33, 36–37, 702 P.2d 353, 356–57 (Ct. App.1985) (finding the cumulative effect of defense attorney's failure to tender two instructions concerning the requisite specific intent and one limiting instruction as to the defendant's statements made in a mental examination constitute ineffective assistance of counsel).

## III. Evidence of Prior Conviction

{13} Defendant contends that the trial court erred by admitting evidence of Defendant's 1987 conviction for distribution of marijuana. We review the trial court's evidentiary rulings for abuse of discretion. *State v. Woodward,* 1996–NMSC–012, ¶ 6, 121 N.M. 1, 908 P.2d 231, *rev'd in part on other grounds sub nom. Woodward v. Williams,* 263 F.3d 1135 (10th Cir.2001).

{14} We provide a brief summary of the record on this issue. Defendant's prior conviction was first addressed after the State had rested and before the defense's case began. The prosecutor informed the court of Defendant's conviction for distribution of marijuana in 1987 and conceded that the conviction was not admissible for impeachment purposes. The prosecutor further argued that if a defense witness were to testify to lack of knowledge of Defendant's reputation for distribution of drugs, then on cross-examination, the State could inquire into the witness's knowledge of Defendant's conviction. Over the objection of defense counsel, the trial court ruled that evidence of the 1987 distribution conviction would be relevant and admissible were the defense to open the door. Following this ruling, the defense on direct examination asked its second witness, a longtime friend of Defendant, whether he had known Defendant to sell drugs. Defense counsel raised the prior conviction specifically on direct examination of a third defense witness. The one reference to the prior conviction was raised in front of the jury, by the defense.

■ {15} Defendant makes one claim on appeal: that the trial court erred in failing to

require expert testimony regarding the relationship between Defendant's 1987 conviction for distributing marijuana and the charge of distributing methamphetamine in 2001. Defendant's claim mistakenly presumes that the trial court admitted Defendant's prior conviction as substantive evidence of his guilt. This was not the case. As explained above, the trial court ruled that if the defense inquired into a witness's knowledge of Defendant's reputation for distributing drugs, then it would open the door for the prosecution to rebut such witness testimony with the prior conviction. Moreover, because Defendant has offered no authority to support this claim, we need not review it. *See State v. Allison,* 2000–NMSC–027, ¶ 30, 129 N.M. 566, 11 P.3d 141 (stating that "this Court will not review issues raised in appellate briefs that are unsupported by cited authority") (internal quotation marks and citation omitted).

## IV. Sufficiency of the Evidence

■ {16} Lastly, Defendant challenges the sufficiency of the evidence to establish his requisite possession of the drugs. In reviewing the sufficiency of the evidence, we are required to view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inquiries to the contrary. *State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Just because the evidence supporting the conviction was circumstantial does not mean it was not substantial evidence." *State v. Duran,* 107 N.M. 603, 605, 762 P.2d 890, 892 (1988). We do not reweigh the evidence, nor do we substitute our judgment for that of the finder of fact. *State v. Apodaca,* 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). Applying this standard, we hold that there is sufficient evidence to support the verdict.

{17} Defendant does not dispute that he was in the closed bathroom alone with the drugs and paraphernalia, he had no clean clothes with him, and after five minutes in the bathroom, he had not taken a shower and there was no indication he was planning to do so. Additionally, the folded business card found on the toilet with a powdery substance in the crease and with handwritten notations of what appeared to be drug transactions, connected Defendant to the control over and distribution of the drugs. *Cf. State v. Brietag,* 108 N.M. 368, 370–71, 772 P.2d 898, 900–01 (Ct.App.1989) (finding the evidence insufficient to support a finding of constructive possession when the drugs were found on premises in which defendant no longer resided and which was occupied by several people, not the defendant, and the only evidence linking the defendant to the drugs was the proximity of a few of his personal effects to the drugs). The jury in this case was free to disbelieve Defendant's version of the events: that he was an innocent bystander in the motel bathroom, that he was there only to take a shower, and that the police discovered someone else's drugs on the back of the toilet. *See Huff,* 1998–NMCA–075, ¶ 11, 125 N.M. 254, 960 P.2d 342.

## CONCLUSION

{18} For the foregoing reasons, we affirm Defendant's conviction.

{19} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.