2004-NMSC-019

92 P.3d 633

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Joe BARBER, Defendant–Petitioner.**

No. 27,938.

Supreme Court of New Mexico.

May 19, 2004.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, for Petitioner.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Albuquerque, for Respondent.

## OPINION

BOSSON, Justice.

{1} Defendant Joe Barber appeals from his conviction of possession of methamphetamine with intent to distribute. *See* NMSA 1978, § 30–31–22 (1990). Our primary issue is whether the absence of a jury instruction defining possession constitutes fundamental error and requires a new trial. Defendant claims that the failure to define possession addressed a "critical determination akin to a missing elements instruction" and created the possibility of jury confusion. The Court of Appeals declined to find fundamental error. *See State v. Barber*, 2003–NMCA–053, ¶¶ 9–11, 133 N.M. 540, 65 P.3d 1095. We granted certiorari to review that question. Although Defendant would have been entitled to a jury instruction defining possession, we hold that absent his defense counsel's request, the trial court was not required to provide the instruction sua sponte. We further hold that the evidence of possession and intent was sufficient to support Defendant's conviction. Accordingly, we affirm the judgment and conviction below.

## BACKGROUND

{2} On January 4, 2001, police went to the Budget 7 Motel in Lovington, New Mexico, in response to a confidential tip. Audrey Watson, who was staying in one of the motel rooms with her children, was standing in the parking lot with D'Lisa Dudley and two men. Watson gave the officers consent to search her room. Defendant was in the bathroom.

{3} In the motel room, the police found syringes in Watson's purse and Dudley's jacket. On top of the toilet in the bathroom, the officers found a small set of scales, a crumpled piece of foil, three plastic baggies containing methamphetamine, and a Cellular One business card folded in half with traces of methamphetamine in the crease. The business card had the name of a Cellular One sales representative printed on it and some notations handwritten on the back. In the medicine cabinet, the police found a box of

baking soda, empty corners cut from plastic bags, and an empty Marlboro box with the foil removed. Tests revealed no fingerprints on any of the evidence.

{4}  In Defendant's pockets, police found a plastic notebook cover, two calendar pages, and various business cards. These cards included eight from Cellular One, two of which were printed with the name of the same sales representative as the card found on the toilet. Written on the back of these cards and on the calendar pages were names or initials, dates, and dollar figures. The officers found no drugs, money, or paraphernalia on Defendant's person. He was carrying a soft pack of Marlboros. Based on the contraband, drug paraphernalia, and other evidence found in the bathroom, the district attorney charged Defendant with possession of methamphetamine with intent to distribute.

{5}  At trial, an expert on drug investigation testified that the notations on the Cellular One cards found in Defendant's wallet were consistent with drug transaction records and included names of known drug users. The officer also testified that the amount of methamphetamine found on the top of the toilet, and the way it was laid out, indicated to him that it was being packaged for sale.

{6}  Defendant denied possessing the contraband in the bathroom or intending to distribute it. Defendant said that he went to the motel to take a shower before his afternoon shift as a roughneck on an oil rig. He did not bring a change of clothes or a shower kit. Defendant testified that he saw the methamphetamine in the bathroom but did not touch it because it did not belong to him. Defendant and three defense witnesses testified that Defendant often borrowed and loaned money and made notations on business cards to keep track of these lawful transactions.

**PROCEDURE**

{7}  After a two-day trial, a jury convicted Defendant of one count of possession of methamphetamine with intent to distribute, contrary to Section 30–31–22. The jury was given the following Uniform Jury Instruction (UJI) without objection or any request for amplification or definition from Defendant:

For you to find the defendant guilty of Possession with Intent to Distribute, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1.  The defendant had Methamphetamine in his possession;

2.  The defendant knew it was Methamphetamine;

3.  The defendant intended to transfer it to another;

4.  This happened in New Mexico on or about the 4th day of January, 2001.

UJI 14–3104 NMRA 2004. On appeal, Defendant argues for the first time that the trial judge should also have defined "possession" for the jury.

**DISCUSSION**

**Standard of Review**

■  {8}  Because Defendant failed to preserve any error with respect to the definition of possession, we review only for fundamental error. *See* Rule 12–216(B)(2) NMRA 2004 (providing appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights); *State v. Sosa,* 1997–NMSC–032, ¶ 23, 123 N.M. 564, 943 P.2d 1017. The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice. *State v. Jett,* 111 N.M. 309, 314, 805 P.2d 78, 83 (1991). Error that is fundamental, we have said,

must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

*State v. Garcia,* 46 N.M. 302, 309, 128 P.2d 459, 462 (1942). Although we exercise the power to review for fundamental error guardedly, we also recognize that "[t]here exists in every court . . . an inherent power to see that a man's fundamental rights are protected in every case." *State v. Garcia,* 19

N.M. 414, 421, 143 P. 1012, 1014–15 (1914) (opinion upon rehearing).

## Defendant would have been entitled to a jury instruction defining possession.

■ {9} We must first determine whether Defendant would have been entitled to a definition of possession had he requested it. The State denies Defendant's entitlement to the instruction based on the strength of the evidence against him.

■ {10} The Use Note to UJI 14–3104, the instruction for possession with intent to distribute, states that the UJI definition of possession "should be given if possession is in issue." Because possession was not defined, the jury was not informed that a "person is in possession [of methamphetamine] when he knows it is on his person or in his presence, *and he exercises control over it.*" UJI 14–3130 NMRA 2004 (emphasis added). As part of that definition, the jury also was not told that "[a] person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession." *Id.* In other words, the jury was never told that mere presence or proximity, even with knowledge, is not enough; there must be proof of "control" over the contraband for the jury to convict of possession. The Committee Commentary to UJI 14–3130 says this definition *must* be given when possession is in issue.[1]

{11} Defendant denied possessing the illegal drugs or exercising any control over them which, he argues, puts the element of possession "in issue" and makes the instruction defining possession mandatory. According to Defendant's theory of the case, and his testimony at trial, he went to the motel to take a shower. He saw the drugs and knew what they were, but did not touch them because they were not his. Defendant emphasizes that four admitted methamphetamine users were also in and around the motel room, and two of them had the paraphernalia to use methamphetamine. In other words, the drugs in the bathroom could have belonged to one or all of them. No

witnesses testified that the drugs belonged to Defendant. Defendant also emphasizes that during trial, the prosecutor repeatedly relied on his physical proximity to the drugs as evidence of possession. Thus, the missing definition that proximity alone is *not* enough would have been important to the jury's understanding of Defendant's case.

{12} The parties' different theories and divergent views of the same evidence strongly suggest that possession was "in issue." Whether Defendant possessed the drugs or was simply in proximity to them was a vital issue in the case. Because this issue was in dispute, an instruction defining the difference between possession and mere proximity would have been important to Defendant's case and a helpful aid to the jury in understanding the legal implications of mere proximity. *Cf. State v. Brown,* 1996–NMSC–073, ¶ 34, 122 N.M. 724, 931 P.2d 69 ("When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error."). Despite the State's opinion that it had a strong case in support of possession, under these facts the issue remained for the jury to determine. Therefore had Defendant requested this definition at trial, it would have been reversible error for the court to deny him.

## Fundamental Error

■ {13} Having determined it would have been error not to define possession for the jury, we exercise our discretion to examine whether the trial court's failure to give the definition constituted fundamental error. *See* Rule 12–216(B)(2).

■ {14} The State argues that, given the strength of the evidence, Defendant cannot show, as he must, that his conviction is so doubtful that it shocks the conscience. "The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." *State v. Rodriguez,* 81 N.M. 503,

---

1. We note that unlike use notes, which are adopted by this Court, committee commentary is not binding authority. *State v. McCrary,* 100

N.M. 671, 673, 675 P.2d 120, 122 (1984). To the extent that this commentary conflicts with Use Note 4 of UJI–3104, the use note prevails.

505, 469 P.2d 148, 150 (1970). Although, as we later discuss, the strength of the evidence belies any claim of Defendant's indisputable innocence, not all questions of fundamental error turn solely on guilt or innocence. Our inquiry must probe deeper.

{15} The doctrine of fundamental error began in 1914 with a barroom brawl that ended badly and a defendant who was unconscious at the time the murder was committed, a murder for which he was nonetheless convicted. On those facts, which conclusively established defendant's innocence, this Court felt compelled to use its inherent power to cut through procedure in order to protect the defendant's substantive rights. *Garcia*, 19 N.M. at 421–22, 143 P. at 1014–15.

{16} Although we have written numerous opinions that turn on the obvious innocence of the defendant, *see, e.g., State v. Salazar*, 78 N.M. 329, 331, 431 P.2d 62, 64 (1967), we also recognize that another strand runs through the fundamental error doctrine that focuses less on guilt and innocence and more on process and the underlying integrity of our judicial system.

{17} In 1942, this Court recognized the two strands in the fundamental error doctrine when it said fundamental error went to the foundation of a defendant's rights. "*Also*," the Court continued, "there may be such a case, as the [1914] *Garcia* case, ... which would so shock the conscience of the court as to call for a reversal." *Garcia*, 46 N.M. at 309, 128 P.2d at 462 (emphasis added). This "shock the conscience" language has been used both to describe cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused. *Compare id.* (referring to *Garcia*, 19 N.M. at 421, 143 P. at 1014–15), *with State v. Osborne*, 111 N.M. 654, 663, 808 P.2d 624, 633 (1991) (holding that a conviction shocked the conscience where instructions did not require the jury to resolve the lawfulness of the defendant's actions). Both types of cases may result in a miscarriage of justice.

{18} In *State v. Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176, we said we would not uphold a conviction if

an error implicated "a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." Thus, we must ask whether the court's failure to define the essential element of possession for the jury caused such a "fundamental unfairness" in Defendant's trial.

{19} Our analysis of whether the failure to define possession rose to the level of fundamental error in Defendant's case begins at the same place as our analysis for reversible error. We must determine whether a reasonable juror would have been confused or misdirected by the jury instruction. *Compare Cunningham*, 2000–NMSC–009, ¶ 14, 128 N.M. 711, 998 P.2d 176 (fundamental error), *with State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994) (reversible error). Fundamental-error analysis then requires a higher level of scrutiny. *Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176. If we find error, our obligation is "to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the Defendant's conviction was the result of a plain miscarriage of justice." *State v. Benally*, 2001–NMSC–033, ¶ 24, 131 N.M. 258, 34 P.3d 1134 (Baca, J., dissenting).

{20} The State maintains that the failure to instruct on a definition or amplification of an essential element, even when called for in an official UJI Use Note, does not rise to the level of fundamental error. Therefore, a missing definition cannot result in the sort of "fundamental unfairness" that undermines the integrity of the judicial system. In most cases, we would agree. *See State v. Doe*, 100 N.M. 481, 483, 672 P.2d 654, 656 (1983) (holding that not following a use note that states a UJI for general criminal intent must be given does not automatically require reversal absent a defendant's request or objection); *State v. Stephens*, 93 N.M. 458, 462, 601 P.2d 428, 432 (1979) (finding that the failure to give an unrequested instruction defining proximate cause is not fundamental error even though the use note requires it whenever causation is in issue), *overruled on other grounds by State v. Contreras*, 120 N.M. 486, 491, 903 P.2d 228, 233 (1995); *State v. Padil-*

*la*, 90 N.M. 481, 482–83, 565 P.2d 352, 353–54 (Ct.App.1977) (refusing to find error in the failure to give an unrequested instruction defining intent to kill or do great bodily harm despite mandatory use note). In contrast, failure to instruct the jury on an essential element, as opposed to a definition, ordinarily is fundamental error even when the defendant fails to object or offer a curative instruction. *See* Rule 5–608(A), (D) NMRA 2004; *Osborne*, 111 N.M. at 662, 808 P.2d at 632.

{21} Defendant urges that his case differs from the general rule pertaining to definitional instructions. He argues that possession has a legal meaning different from the commonly understood lay interpretation of possession, which often equates possession with mere proximity. Given this difference, Defendant sees the instruction defining possession as a crucial warning to the jury not to rely on proximity alone in finding the essential element of possession. In Defendant's view, giving the instruction for possession with intent to distribute but without defining possession leaves the meaning of possession in doubt. Because possession is susceptible to more than one meaning among lay jurors, this ambiguity casts uncertainty over whether the state truly proved the element of possession beyond a reasonable doubt. According to Defendant, the State then exacerbated this ambiguity when at trial it repeatedly emphasized Defendant's proximity to the drugs as the functional equivalent of being in possession of those drugs.

{22} We acknowledge that the potential for jury confusion exists. The legal definition of possession is not necessarily rooted in common discourse. As two legal scholars have said, "The word 'possession,' though frequently used in both ordinary speech and at law, remains one of the most elusive and ambiguous of legal constructs." Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va. L.Rev. 751, 751 (1972). Courts differ on whether the legal concept of possession is "a common term with no artful meaning" or "the most vague of all vague terms." Walter B. Raushenbush, *The Law of Personal Property*,

§ 2.6, at 20 (3d ed.1975). Part of the problem "is that the word possession 'is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins.'" Wayne R. LaFave, *Substantive Criminal Law* § 6.1(f), at 433 (2d ed.2003) (quoting *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67, 34 S.Ct. 209, 58 L.Ed. 504 (1914)). When actual physical control cannot be directly proven, constructive possession is a legal fiction used to expand possession and include those cases "where the inference that there has been possession at one time is exceedingly strong." Whitebread & Stevens, *supra*, at 755 (quoted authority omitted).

{23} To support the argument that an ambiguous jury instruction can potentially confuse the jury, Defendant points to our recent decision in *State v. Mascarenas*, 2000–NMSC–017, 129 N.M. 230, 4 P.3d 1221, in which we acknowledged that, in certain special instances an ambiguous definitional instruction can cause fundamental error. In *Mascarenas*, the defendant was convicted of negligent child abuse. At issue was shaken baby syndrome, in which repeated shaking could cause death. Mascarenas admitted to shaking the baby hard one time, but claimed he did not know that shaking a baby could cause such harm. Although Mascarenas did not object to the jury instruction at trial, he appealed his conviction claiming fundamental error because "the jury instructions failed to adequately define the requisite criminal negligence standard." *Id.* ¶ 6.

{24} On appeal, this Court agreed with Mascarenas and reversed his conviction, finding that the trial court's failure to provide the jury with an adequate instruction defining criminal negligence constituted fundamental error. *Id.* ¶ 21. The inadequate definition created "a distinct possibility that Mascarenas was convicted of child abuse based on the improper civil negligence standard." *Id.* ¶ 13. Even if the jury believed Mascarenas' story, the jury nonetheless could have convicted him due to the confusion about the proper negligence standard required for conviction.

{25} While most definitional instructions merely amplify an element instruction, a few, we concluded in *Mascarenas*, can be of central importance to a fair trial. Thus, considered in light of the facts and circumstances of the trial, the instruction provided a determination critical to understanding the elements instruction. *Id.* ¶¶ 18–20. Although *Mascarenas* involved a definition that affirmatively misstated the law, as opposed to the mere silence in the present case, this distinction is of little consequence if the resulting jury confusion places the verdict in doubt. Therefore, we must place all the facts and circumstances under close scrutiny to see whether the missing instruction caused such confusion that the jury could have convicted Defendant based upon a deficient understanding of the legal meaning of possession as an essential element of the crime. *Cf. State v. Armijo*, 1999–NMCA–087, ¶¶ 5–6, 127 N.M. 594, 985 P.2d 764 (discussing the necessity of an omitted instruction to clarify the slight, but critical distinction between felony and misdemeanor aggravated battery).

{26} In this case, we conclude that the missing definition of possession does not implicate "a critical determination akin to a missing elements instruction," as occurred in *Mascarenas*, 2000–NMSC–017, ¶ 20, 129 N.M. 230, 4 P.3d 1221. Even though the jury was not instructed that it must find Defendant had both knowledge and control over the drugs, no distinct possibility exists from the evidence that the jury convicted Defendant without finding all the elements beyond a reasonable doubt. As an initial matter, we believe that if the jury misunderstood the meaning of "possession," it would probably not be because the jury equated "possession" with "mere proximity," rather it would be because the jury equated "possession" with "ownership." Such a misunderstanding actually would have placed a greater burden on the prosecution, because ownership would be more difficult to prove than possession alone.

█ {27} To prove either actual or constructive possession, the State had to show Defendant had both knowledge and control of the illegal drugs in the bathroom. *See State v. Montoya*, 85 N.M. 126, 127, 509 P.2d 893, 894 (Ct.App.1973). Evidence of control includes the power to produce or dispose of the narcotic. *Id.* Proof of possession in controlled substances cases may be established by evidence of the conduct and actions of a defendant, and by circumstantial evidence connecting defendant with the crime. *State v. Donaldson*, 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct.App.1983).

█ {28} While possession may not be proven by proximity alone, the evidence elicited at trial demonstrates far more than that. Under the circumstances of this case, the jury could properly infer control from the circumstantial evidence introduced by the state. "In a broad sense, the term 'possession' denotes facts pertaining to the relationship between a person and an item of property, as well as the consequences that attach to those facts." *State v. Sizemore*, 115 N.M. 753, 758, 858 P.2d 420, 425 (Ct.App.1993) (quoted authority omitted). The most telling fact linking Defendant to the methamphetamine was the business card found on top of the toilet tank, a business card remarkably similar to cards found in Defendant's wallet. That link, among other pieces of evidence, persuades us that there is no reasonable likelihood that the jury was confused, or confused enough to convict on proximity alone. To the contrary, we are satisfied that the jury convicted Defendant because of what he likely did and was planning to do with the drugs while they were in his presence. In so doing, the jury correctly followed the instructions, drew reasonable inferences from the evidence, and showed no likelihood of any material confusion of the kind that would place in doubt whether the jury actually found the essential elements of the crime.

█ {29} Moreover, even assuming the jury instruction was defectively ambiguous without the definition of possession, we would then evaluate whether the jury instructions as a whole cured the ambiguity. *See Benally*, 2001–NMSC–033, ¶ 15, 131 N.M. 258, 34 P.3d 1134. Error is not fundamental when the jury could not have reached its verdict without also finding the element omitted from the instructions. *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992).

In addition to possession, the State was required to prove that Defendant intended to transfer the methamphetamine to another. *See* UJI 14–3104. The jury so found.

{30} We agree with the State that under the facts of this case the jury could not have found that Defendant intended to transfer the methamphetamine in the bathroom without also finding that Defendant was exercising some degree of control over the drugs. *Cf. State v. Gonzales,* 86 N.M. 556, 558, 525 P.2d 916, 918 (Ct.App.1974) (holding that failure to define possession was not error because a defendant could not have intentionally possessed or sold heroin without *knowledge* that the item possessed and sold was heroin), *overruled on other grounds by State v. Bender,* 91 N.M. 670, 671, 579 P.2d 796, 797 (1978). This was not a mere possession case; the charge was both possession and intent to distribute, and the jury found Defendant guilty of both elements. Substantial evidence supports the jury's determination.

{31} In this case, the jury could infer intent to distribute from the amount and packaging of the drugs. In order to find that Defendant was preparing the drugs for sale, the jury had to find first that the drugs were within his knowledge and control. The notations on Defendant's cards, coupled with the matching card on the toilet, certainly permit an inference that Defendant was a drug dealer, and that he was in that bathroom to package drugs for sale. Therefore, in this case, the third element of the jury instruction, intent to distribute, necessarily subsumes a finding on the element of control.

{32} For all the foregoing reasons, therefore, we conclude that the essential-elements jury instruction, even though arguably ambiguous without defining possession, did not create confusion in the jury that would undermine the reliability of the verdict and the integrity of our judicial system.

**Sufficiency of Evidence**

{33} Defendant argues that there was insufficient evidence to support his conviction for possession of methamphetamine with intent to distribute. We disagree and also affirm the Court of Appeals on this issue. To determine whether there is enough evidence to support a verdict, we view the evidence in the light most favorable to the judgment, resolving all conflicts and indulging all inferences in favor of upholding the verdict. *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993); *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cunningham,* 2000–NMSC–009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (quoted authority omitted). We have already discussed the evidence in the preceding section. Viewed in the light most favorable to the State, the evidence was sufficient so that a reasonable jury could have found the essential elements of the crime. Based upon the record, the State presented enough circumstantial evidence to support an inference of both knowledge and control, and therefore possession of methamphetamine. Furthermore, there was sufficient evidence from which a rational jury could have found that Defendant intended to distribute that methamphetamine.

**CONCLUSION**

{34} For the reasons stated, we affirm the conviction and judgment below.

{35} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, C.J., PAMELA B. MINZNER and EDWARD L. CHAVEZ, JJ.

PATRICIO M. SERNA, J. (specially concurring).

SERNA, Justice (specially concurring).

{36} I concur in the majority's conclusion that the failure to instruct on the definition of possession did not constitute fundamental error. In New Mexico, "[a] distinction is made ... between the status of jury instructions on essential elements and definitional jury instructions." *Doe,* 100 N.M. at 483, 672 P.2d at 656. "[T]he failure to instruct the jury on the definition or the amplification of the elements does not constitute error." *Stephens,* 93 N.M. at 462, 601 P.2d at 432; *accord State v. Allen,* 2000–NMSC–002, ¶ 76,

128 N.M. 482, 994 P.2d 728; *State v. Gonzales,* 112 N.M. 544, 817 P.2d 1186 (1991); *State v. Crain,* 1997–NMCA–101, ¶¶ 10–12, 124 N.M. 84, 946 P.2d 1095; *State v. Lucero,* 118 N.M. 696, 700–01, 884 P.2d 1175, 1179–80 (Ct.App.1994); *State v. Ramos,* 115 N.M. 718, 726, 858 P.2d 94, 102 (Ct.App.1993); *State v. Tarango,* 105 N.M. 592, 734 P.2d 1275 (Ct.App.1987); *State v. Jennings,* 102 N.M. 89, 93, 691 P.2d 882, 886 (Ct.App.1984).

{37} I do not read *Mascarenas* as being inconsistent with this principle. We held in *Mascarenas* that the omitted instruction was akin to a missing elements instruction because the jury was not informed of the essential statutory element of criminal negligence. 2000–NMSC–017, ¶ 20, 129 N.M. 230, 4 P.3d 1221. This missing element created fundamental error both because "it is the duty of the court, not the defendant, to instruct the jury on the essential elements of a crime," *Osborne,* 111 N.M. at 662, 808 P.2d at 632, and because, "if the instruction omitted an element which was at issue in the case, the error could be considered fundamental: The question of guilt would be so doubtful that it would 'shock the conscience' of this Court to permit the conviction to stand." *Orosco,* 113 N.M. at 783, 833 P.2d at 1149.

{38} "In determining what is or is not an essential element of an offense, we begin with the language of the statute itself, seeking of course to give effect to the intent of the legislature." *Osborne,* 111 N.M. at 657–58, 808 P.2d at 627–28 (citation omitted). "[I]f the jury instructions substantially follow the language of the statute or use equivalent language, then they are sufficient." *Doe,* 100 N.M. at 483, 672 P.2d at 656. In this case, the jury instruction contained all of the statutory elements of the crime. There is no indication that the Legislature intended for the definition of possession to be an element of the crime, notwithstanding Use Note 4 of UJI 14–3104.

The language in a Use Note, like a definitional jury instruction, cannot elevate a jury instruction to the status of an *essential element.* This is not to imply that Use Notes may be ignored. Nevertheless, ... a defendant cannot sit back and insert error into a trial by his or her inaction and

receive an automatic reversal when the crime has been fairly instructed on.

*Doe,* 100 N.M. at 483–84, 672 P.2d at 656–57 (citation omitted).

{39} While I agree with the majority that constructive possession has complex legal contours, this concept is certainly no more complex than the issue of proximate cause, for which we have held that the failure to define, in amplification of the essential elements of felony murder, does not constitute fundamental error. *Stephens,* 93 N.M. at 462, 601 P.2d at 432. Moreover, the lay definition of "possession" includes the basic concept of exercising control over the item. Thus, the jury's application of the common meaning of the term would not have resulted in a failure to find a statutory element of the crime. *See State v. Aragon,* 99 N.M. 190, 193, 656 P.2d 240, 243 (Ct.App.1982) (rejecting the defendant's argument that the failure to instruct on the definition of "possession," as currently set out in UJI 14–130 NMRA 2004, which explained constructive possession, constituted error in the absence of a request for the instruction).

{40} For the more onerous standard of fundamental error, which requires a miscarriage of justice, as with the less stringent standard of plain error, which does not require a miscarriage of justice, this Court will not reverse a conviction unless an alleged error "constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). Because the trial court adequately instructed the jury on the essential elements of the crime, there is no fundamental unfairness that would make the question of guilt so doubtful as to shock the conscience to permit the conviction to stand. *See Rodriguez,* 81 N.M. at 505, 469 P.2d at 150 ("The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand."), *quoted in Cunningham,* 2000–NMSC–009, ¶ 13, 128 N.M. 711,

998 P.2d 176. As a result, there is no fundamental error.