This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36409**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROBERT APODACA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Matthew J. Wilson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Kennedy, Hernandez & Associated, P.C.
Paul J. Kennedy
Elizabeth A. Harrison
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals his conviction for evading an officer, contrary to NMSA 1978, Section 30-22-1(B) (1981). He argues that the district court erred by refusing to instruct the jury that conviction requires evidence of more than "mere forestallment" and that his conviction is not supported by sufficient evidence. We affirm.

**BACKGROUND**

**{2}**     This case began with an argument between Defendant and his then-girlfriend, Valerie Huizar, at her parents' house. Huizar called 911. Defendant left the house on foot, and Huizar followed him on foot and in her car. At one point, she drove past Defendant and told him she had called the police to have him arrested on an outstanding warrant.

**{3}**     Officer Michelle Ortega, a patrol officer with the Española Police Department, was dispatched to make contact with Defendant. Officer Ortega was in full uniform, displaying a badge, and drove her marked police car to the scene, where she found Defendant walking down a road. She pulled up next to Defendant and said, "I need to talk to you, keep your hands out of your pockets." Officer Ortega asked him to

> stand where he was at. [Defendant] basically told me no. [He] continued walking. [I] told him to take his hands out of his pockets. Again he told me no. He continued walking, at which time I let dispatch know what was happening. At which time he turned down [a road].

Officer Ortega followed, parked her patrol car and got out of the vehicle. Once outside the car, she again "asked [Defendant] to stop where he was walking," but Defendant continued walking away from her. Although Officer Ortega testified that she did not remember her exact words, she confirmed on cross-examination that she remembered "telling [Defendant] to stop," both before and after she exited her vehicle.

**{4}**     Officer Ortega stated that she "started walking towards [Defendant] a little bit, at which time [Defendant] completely turned around [and] started coming towards me." Officer Ortega asked him multiple times to stop and to remove his hands from his pockets, and when Defendant did not comply, Officer Ortega pulled out her gun. Defendant started "trotting" toward her, took something out of his pocket and "flung" it toward her. Officer Ortega shot Defendant in the leg, and Defendant finally stopped momentarily to examine his wound before getting up and walking away again.

**{5}**     In an interview with a police officer at the hospital, Defendant said he "was kind of confused with the relationship [with Huizar]," and he decided to walk away. Defendant said that as he was walking, Ms. Huizar "passed me and said I'm gonna put you in jail, because . . . she knows I have a warrant, so she's threatening[.]" Defendant said he texted his brother, saying he was "afraid that [Ms. Huizar was] gonna put me in jail." Defendant also called Ms. Huizar's parents and said, "I think she's calling the cops on me," but they said they did not think she would. Defendant said that when Officer Ortega arrived, Defendant "tried to walk away from" the officer because he was "afraid."

**{6}**     The jury instructions required the State to prove:

> 1.     [Officer] Ortega was a peace officer in the lawful discharge of duty;

2. [D]efendant knew [Officer] Ortega was a peace officer;

3. [D]efendant, with knowledge that [Officer] Ortega was attempting to apprehend or arrest [D]efendant, fled, attempted to evade or evaded [Officer] Ortega;

4. This happened in New Mexico, on or about the 30th day of November, 2014.

The jury submitted two questions to the district court during its deliberations: "Does the officer legally need to explicitly [sic] state that [D]efendant is under arrest?" and "[w]hat is the legal definition of apprehend?" The district court stated that it cannot answer those questions and instructed the jury to rely on the jury instructions as given, as well as their collective understanding of the word "apprehend." The jury found Defendant guilty of evading arrest.

## DISCUSSION

### I. The District Court Correctly Gave the Uniform Jury Instruction Without Modification

**{7}** Defendant argues that the district court erred by refusing to instruct the jury that evading requires more than "mere forestallment" of an arrest, relying on *State v. Jimenez*, 2017-NMCA-039, ¶ 37, 392 P.3d 668, *cert. denied* 2017-NMCERT-004 (No. S-1-SC-36346, Apr. 6, 2017). The State responds that there was no error because the jury received the applicable uniform jury instruction, UJI 14-2215 NMRA, which provided the jury with an accurate rendition of the relevant law. *See State v. Parish*, 1994-NMSC-073, ¶ 26, 118 N.M. 39, 878 P.2d 988 (stating that the New Mexico Supreme Court's adoption of uniform jury instructions "establishes a presumption that the instructions are correct statements of law" (internal quotation marks and citation omitted)). Defendant's brief in chief failed to provide any citation to the record showing where his argument was preserved below, contrary to Rule 12-318(A)(4) NMRA.

**{8}** Notwithstanding the apparent agreement of the parties that this issue was preserved, it is clear from our review of the jury instruction conference that it was not. At trial, Defendant objected to using UJI 14-2215 based on *Jimenez*. He tendered no instructions of his own and requested only that the word "intentionally" be added to the third element such that he could be convicted only if he "*intentionally* fled, attempted to evade[,] or evaded [Officer] Ortega." He now argues that the district court should have modified the jury instruction to require that the State "prove beyond a reasonable doubt that [Defendant] intended to move and/or stay away from Officer Ortega in order to avoid capture altogether, and not merely forestall being arrested." Defendant's objection to the instruction and his request to include the word "intentional" does not in any way preserve the instruction he now requests on appeal. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056. ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the

nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review it must appear that a ruling or decision by the district court was fairly invoked.").

**{9}** Because Defendant failed to preserve this issue at trial, we review for fundamental error. *See* Rule 12-321(B)(2)(c); *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (stating that unpreserved jury instruction issues are reviewed only for fundamental error). Our fundamental error inquiry "begins at the same place as our analysis for reversible error. We must determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Barber*, 2004-NMSC-019, ¶ 19. "If we find error, our obligation is to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *Id.* (internal quotation marks and citation omitted).

**{10}** As an initial matter, "[u]niform jury instructions are presumed to be correct." *State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076. "When a uniform jury instruction is provided for the elements of a crime, generally that instruction must be used without substantive modification." *Jackson v. State*, 1983-NMSC-098, ¶ 5, 100 N.M. 487, 672 P.2d 660. "[A]n elements instruction may only be altered when the alteration is adequately supported by binding precedent or the unique circumstances of a particular case, and where the alteration is necessary in order to accurately convey the law to the jury." UJI Crim. General Use Note NMRA. In this case, the district court gave the applicable uniform jury instruction without modification and it is presumed to be correct. With this presumption in mind, we evaluate whether a reasonable juror would have been confused or misdirected such that the instructions, "through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted).

## A.  No Binding Precedent Supported Modification

**{11}** Defendant argues that we recently commented that the word "evade" has "facial ambiguity" in *Jimenez*, 2017-NMCA-039, ¶ 32, and therefore, modification was necessary to prevent juror confusion or misdirection. In *Jimenez*, we noted that the word "evade" was susceptible of multiple meanings and therefore ambiguous when considered alone, but held that its meaning is reasonably understood based on the "notion that 'a word may be known by the company it keeps.' " *Id.* ¶¶ 31-34 (quoting *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923)). We concluded that because "the Legislature made 'evade' the 'linguistic neighbor' of 'flee' in [Section 30-22-1](B) . . . we are to give 'evade' the meaning that most closely and logically associates it with its neighbor, 'flee.' " *Id.* ¶ 36 (citation omitted). Put more simply, "evade" must be read in the context of the jury instruction.

**{12}** In this case, the uniform jury instruction given at trial stated that the element of evasion was satisfied if Defendant "fled, attempted to evade or evaded" Officer Ortega.

Because the jury was not asked to consider "evade" in a vacuum, but rather in the context of its "linguistic neighbors," the jury instruction as a whole was not facially ambiguous and thus, a reasonable juror would not have been confused. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705 (stating that "[j]ury instructions are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law" (internal quotation marks and citation omitted)). A reasonable juror could look to the word's linguistic neighbors to understand that "evade" does not refer to the act of merely forestalling arrest. *See Jimenez*, 2017-NMCA-039, ¶¶ 36-37. As such, Defendant does not persuade us, nor does our analysis in *Jimenez* compel us to hold that the UJI given at trial resulted in juror confusion or misdirection.

## B. No Unique Circumstances of This Case Supported Modification

**{13}** Defendant also argues that his theory of the case supported modification of the uniform jury instruction. On appeal, Defendant contends that he was not attempting to evade arrest, but rather, merely attempting to "forestall" arrest. This theory is based on our discussion in *Jimenez*, which distinguished evading, as it is used in Section 30-22-1(B) from resisting, as it is used in Section 30-22-1(D):

> In sum, understood temporally and geospatially, violations of [Section 30-22-1(B), (D)] are distinguishable based on at what point in an encounter a defendant first begins to exhibit resistant conduct. A defendant who is not yet physically capable of being apprehended and who attempts to avoid apprehension by trying to evacuate himself from the presence of an officer is more likely to be in violation of Subsection (B). By contrast, a defendant who is effectively "cornered," i.e., whose apprehension is imminent, but who, nonetheless, chooses to challenge or forestall his arrest—either by physical battery, refusing to comply with orders, or verbally—violates Subsection (D) [prohibiting a defendant from "resisting or abusing . . . a peace officer in the lawful discharge of his duties].

*Jimenez*, 2017-NMCA-039, ¶ 40. Defendant's forestallment theory, however, is not supported by the evidence; he admits on appeal that he walked away from Officer Ortega and in light of this admission, we conclude there are no unique circumstances presented in this case that justify Defendant's proposed instruction.

**{14}** Because neither binding precedent nor any special circumstances support the modification that Defendant requests, we detect no error, much less fundamental error.

## II. Sufficiency of the Evidence

**{15}** Defendant further challenges the sufficiency of the evidence supporting his conviction. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v.*

*Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (alteration, internal quotation marks, and citation omitted). We disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{16}** Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franco*, 2019-NMCA-___, ___ P.3d ___ (No. A-1-CA-35470, June 13, 2019) (internal quotation marks and citation omitted). "[J]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (internal quotation marks and citation omitted).

## A.    Defendant Was Not Free to Leave

**{17}** Defendant argues that he "had the right to walk away" from Officer Ortega, and thus was not "evading." In *State v. Gutierrez*, 2007-NMSC-033, ¶ 32, 142 N.M. 1, 162 P.3d 156, our Supreme Court held that in order to sustain a conviction for evading apprehension during a *Terry* stop, the officer must have had at least reasonable suspicion that the defendant "had committed or was about to commit a crime," and there must have been a "show of authority" sufficient to convey to a reasonable person that they "were not free to leave." *Id.* ¶¶ 32, 34-35. Defendant does not argue that Officer Ortega lacked reasonable suspicion to detain him or probable cause to arrest him, and so we address only whether Officer Ortega made a show of authority sufficient for a seizure. "[W]hether there was a show of authority sufficient for a seizure, . . . is an objective test and depends on whether the officer's words or actions would have conveyed to a reasonable person that he was being ordered to restrict his movement." *Id.* ¶ 34 (internal quotation marks and citation omitted).

**{18}** Officer Ortega ordered Defendant to stand where he was at and to stop where he was walking, all following her introductory remarks stating that she needed to talk to Defendant. She also followed Defendant in her marked police car, stopped the car, and got out while wearing her uniform. Evaluating the evidence in the light most favorable to the guilty verdict, we hold that Officer Ortega's words and actions would convey to a reasonable person that he or she was being ordered to remain in one place and was not free to leave. *See Gutierrez*, 2007-NMSC-033, ¶ 34 (holding that there was a show of authority sufficient for a seizure where an officer "asked [the d]efendant to stop because he needed to talk to him" and the officer followed the defendant into his house).

## B.    Defendant Evaded by Walking Away

**{19}** Defendant also argues that there was insufficient evidence that he "fled, attempted to evade or evaded" Officer Ortega for purposes of the third element of the jury instructions. Defendant argues that "[t]he facts presented simply do not align with

the definition of evading described by the Court of Appeals in *Jimenez*, [2017-NMCA-039, ¶ 37], and do not support an inference that [Defendant] was attempting to avoid capture." In support of this argument, Defendant argues that his refusal to speak with Officer Ortega and to take his hands out of his pockets do not constitute evading. We disagree, as evidence that Defendant walked away satisfies the element of evading.

**{20}** As Defendant acknowledges, our cases upholding convictions under Section 30-22-1(B) have "involved an affirmative physical act to move and/or stay away from an officer in order to avoid capture altogether." *Jimenez*, 2017-NMCA-039, ¶ 37. Contrary to Defendant's suggestion, the State was not required to prove that Defendant "ran, hid, veered off the road, holed up so as to be inaccessible to the officer, or attempted to trick the officer in order to effect an escape." Any "affirmative physical act to move and/or stay away from an officer" is sufficient, even "backing away." *Jimenez*, 2017-NMCA-039, ¶ 37; *State v. Diaz*, 1995-NMCA-137, ¶ 17, 121 N.M. 28, 908 P.2d 258 (stating that "the evidence that [the d]efendant was backing away from the officers . . . would have supported a finding that [the d]efendant was . . . attempting to evade arrest in violation of Section 30-22-1(B)"); *see Gutierrez*, 2007-NMSC-033, ¶ 31 ("While a person has the constitutional right to walk away from an officer who lacks reasonable suspicion and simply wants to question the person, a person who walks away from an officer attempting to detain that person based on reasonable suspicion can be charged with evading and eluding an officer under Section 30-22-1(B)."). Officer Ortega testified that Defendant walked away from her after she told him to "stop where he was walking." This is sufficient to support a finding that Defendant evaded Officer Ortega.

## III.   CONCLUSION

**{21}**   We affirm Defendant's conviction.

**{22}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**ZACHARY A. IVES, Judge**