This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40458**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**KENNETH L. VEST,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief in the above-entitled cause, pursuant to this Court's notice of assignment to the general calendar with modified briefing. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing, as defined in the Administrative Order *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Now having

considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

{2}     Defendant appeals the district court's judgment and sentence, convicting him of two counts of aggravated assault with a deadly weapon and one count of trespass. Defendant contends: (1) it was fundamental error to not instruct the jury on Defendant's theory of self-defense [BIC 6-18]; (2) his counsel was ineffective for failing to request a self-defense instruction [BIC 19-23]; and (3) insufficient evidence supports Defendant's convictions [BIC 24-27].

## I.     Self-Defense Jury Instruction

{3}     Because Defendant did not request a self-defense jury instruction or preserve any related error in the instructions, our review is for fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. A missing instruction will rise to the level of fundamental error where such a mistake in the process shocks the conscience, *id.* ¶ 17, and implicates "a fundamental unfairness within the system that would undermine judicial integrity if left unchecked," *id.* ¶ 18 (internal quotation marks and citation omitted). Our review begins by examining whether Defendant would have been entitled to the self-defense instruction based on the evidence. *See id.* ¶ 9.

{4}     The relevant trial testimony in the current case described different versions of events. The parties do not dispute that on the evening in question, Defendant entered the rural property of Shirley and Billie Winchester without permission and stood inside the Winchesters' gate at around 10:00 p.m. [BIC 2-3, 5] At the time, the Winchesters were outside having a small cookout and bonfire with guests. [BIC 3; AB 2]

{5}     In Shirley Winchester's version of events, she heard her two well-trained blue heelers, horse- and cattle-rounding dogs, barking loudly. [BIC 3; AB 2] Shirley went to see what was happening and saw Defendant inside the gate of their property and the dogs barking at him. [BIC 3; AB 2] Shirley told Defendant that he was on private property and had to leave, and Defendant refused. [AB 2-3] When she repeated that he had to leave, Defendant pulled out a knife and, with demanding and slurred words, stated that he was lost, thirsty and needed food and water. [AB 3; BIC 3] Shirley explained that, at that point, her husband Billie Winchester joined her and also told Defendant to leave. [AB 3] Rather than leave, Defendant lunged at them with a knife, and in response, Billie shot Defendant in the hip. [AB 3] Shirley testified that she was scared because she thought Defendant might use the knife on her. [AB 3]

{6}     Billie Winchester testified to slightly different events. Billie stated that when he came around the corner, he saw their dogs were "going crazy" [BIC 3] and circling Defendant [BIC 4], and stated that he called the dogs off [BIC 3; AB 3]. Billie stated that Shirley was hollering at Defendant, and Defendant was cursing at her and demanding water. [BIC 3; AB 3] Billie told Defendant where he could get water and told him to leave. [BIC 3; AB 3] Billie testified that, instead of leaving, Defendant walked toward them with a "crazy look in his eyes," pulled a knife and drew it over his head, ready to

strike. [AB 3] Billie explained that, knowing there were teenage girls in the house behind him, he did not want Defendant coming any closer. [AB 3] When Defendant came within two or three feet of Shirley, he drew his firearm and shot Defendant once in the hip [AB 3-4] with "snake shot" ammunition that held about 200 tiny pellets [BIC 3].

**{7}** Defendant testified to a different version of events than either of the Winchesters. Defendant explained that he was dehydrated, lost, and walked up to the Winchesters to ask for a glass of water. [AB 4] Defendant stated that the Winchesters refused to give him water and stated that they had a gun and would shoot him if he did not leave. [AB 4] Defendant asked the Winchesters to call off the dogs, which were circling him. [AB 4; BIC 4] Defendant testified that Shirley told him the dogs were doing their job. [AB 4; BIC 4] Defendant stated that he felt something behind him and thought it must have been the dogs circling behind him. [BIC 4; AB 4] Defendant testified that, in response, he reached to pull his knife on the dogs and to spin around, but was shot mainly on the back of his hip. [BIC 4; AB 4] Defendant stated that he was about fifteen feet from Mr. Winchester when he was shot. [AB 4] Defendant explained that his actions were the result of his instinct and training in the military and his belief that he needed to protect himself against the dogs. [BIC 4; AB 4] Defendant stated that he would not pull a knife on someone who had warned him that they had a gun; he pulled the knife on the dogs, not the Winchesters. [BIC 4; AB 4]

**{8}** In short, in Defendant's version of events, he pulled a knife on the Winchesters' dogs, who he claimed were circling him, when he was shot by Billie Winchester from about fifteen feet away. [BIC 4; AB 4] Defendant claims entitlement to a nonhomicide, deadly force self-defense instruction [BIC 11], which would ask the jury whether the state disproved beyond a reasonable doubt that "[t]here was an appearance of immediate danger of death or great bodily harm to the defendant as a result of [an unlawful action, which would result in death or some great bodily harm]; [t]he defendant was in fact put in fear of immediate death or great bodily harm and [committed an act in defense of him or herself] because of that fear; and [t]he apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did." UJI 14-5183 NMRA.

**{9}** In our determination of whether Defendant was entitled this nonhomicide, deadly force self-defense instruction, we note that Defendant does not identify the unlawful act that put him in fear, as is required by UJI 14-1583. Defendant claims he pulled the knife because he felt something behind him. [BIC 12] Defendant contends both that "[t]here was an appearance of immediate danger of great bodily harm based on his testimony that the trained Blue Heelers were *circling* him," and that is "there was an appearance of immediate danger of death or great bodily harm to [him] as a result of the Winchester's dogs *mounting an attack*." [BIC 12-13] But while Defendant may have felt fear due to the presence of the dogs, Defendant has not established that the dogs mounted an attack before he pulled the knife, nor has he established that the dogs merely circling him or coming up behind him amounted to an unlawful act necessary for purposes of the first element of a self-defense instruction.

**{10}** Under these facts, even viewing the evidence in the light most favorable to the giving of a self-defense instruction, we cannot conclude that the evidence is such that reasonable minds could differ as to the first element of self-defense in Defendant's case. *State v. Baroz*, 2017-NMSC-030, ¶ 19, 404 P.3d 769; *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 ("[F]undamental error does not occur if the jury was not instructed on an element not at issue in the case."). Consequently, we are not persuaded that fundamental error occurred or that reversal is required.

## II.    Ineffective Assistance of Counsel Claim

**{11}** Defendant contends that because the only defense at trial was that Defendant acted in self-defense and his attorney failed to request self-defense instructions, he was denied the effective assistance of counsel. [BIC 19-24] "In order to prevail on an ineffective assistance of counsel claim, a defendant must show deficiency on the part of counsel and that such deficiency resulted in prejudice." *State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162. "There is a general presumption that trial counsel provided effective assistance." *Id.* "The presumption of effective assistance will remain intact as long as there is a reasonable trial tactic explaining counsel's performance." *Id.*

**{12}** The defense's theory in the current case was that Defendant did not threaten the Winchesters with a knife. As we discussed above, this trial strategy does not support a defense to the charges against Defendant for the aggravated assaults the State alleged he committed against the Winchesters. If defense counsel were to request a self-defense instruction, it would have conflicted with Defendant's version of events that he did not commit aggravated assault with a deadly weapon against the Winchesters. Thus, requesting the jury instruction on self-defense would not have supported the defense trial strategy. If we were to hold that defense counsel should have requested the instruction, then we would be second-guessing the trial strategy, which our case law does not permit. *See id.* ¶ 14 (holding that where a jury instruction would not support the defense trial strategy, we will not find ineffective assistance of counsel because that would second-guess the trial strategy). For these reasons, we conclude that Defendant has not demonstrated a prima facie claim of ineffective assistance of counsel.

## III.    Sufficiency of the Evidence

**{13}** Lastly, Defendant challenges the sufficiency of the evidence to support his convictions for aggravated assault with a deadly weapon against the Winchesters. [BIC 24-28] Defendant asks us to assess the sufficiency of the State's evidence of the lawfulness of Defendant's actions under a self-defense theory, arguing that the evidence needs to be adequate under the law, not under inaccurate jury instructions. [BIC 25-27] We are not persuaded that the jury instructions were inadequate and there is no argument that the instructions conflict with the offense as defined by statute. *Cf. State v. Stephenson*, 2017-NMSC-002, ¶¶ 2, 23-28, 389 P.3d 272 (measuring the sufficiency of the evidence based on the Court's new interpretation of the statute, not the inaccurate instructions given to the jury). Thus, we review the sufficiency of the evidence under the instructions that were given. *See State v. Smith*, 1986-NMCA-089, ¶

7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{14}** When assessing the sufficiency of the evidence, "we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "We then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted).

**{15}** The jury instructions, in relevant part, asked whether the State proved beyond a reasonable doubt that (1) Defendant raised a knife at Shirley and Billie Winchester, which (2) caused the Winchesters to believe that Defendant was about to intrude on their bodily integrity or personal safety by touching or applying force to them in a rude, insolent or angry manner; (3) a reasonable person in the same circumstances as the Winchesters would have had the same belief; and (4) Defendant used a knife. [RP 105-06]

**{16}** As explained in detail above, the testimony established that while trespassing on their property at night and appearing to be crazy or on drugs, Defendant rudely demanded water and food, slurring his words. [BIC 3; AB 3] After repeatedly being told to leave and where to get water, Defendant pulled a knife and lunged at the Winchesters appearing ready to strike, which caused them fear. [BIC 3; AB 2-3] Viewing the evidence through the lens of principles stated above, we hold that this evidence is adequate to support Defendant's convictions for aggravated assault with a deadly weapon. *See, e.g.*, *State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 (affirming the conviction on the basis of the testimony of a witness).

**{17}** To the extent Defendant complains that his convictions were based on conflicting testimony [BIC 27-28], we are not persuaded that this constitute grounds for reversal. "New Mexico appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (text only) (citation omitted).

**{18}** For the foregoing reasons, we affirm Defendant's convictions.

**{19}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**