This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37016**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EBONY CUMMINGS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Ebony Cummings was convicted of trafficking methamphetamine by possession with intent to distribute (NMSA 1978, Section 30-31-20(A)(3) (2006)), possession of drug paraphernalia (NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019)), and possession of marijuana (NMSA 1978, Section 30-31-23(A) (2011, amended 2019)). Defendant argues on appeal that (1) the district court erred by improperly instructing the jury on constructive possession, and insufficient evidence supported her constructive possession of the methamphetamine, (2) the district court

erred by failing to instruct on the lesser included offense of simple possession of methamphetamine, (3) her convictions for trafficking and possession of drug paraphernalia violate double jeopardy, and (4) her trial attorney provided ineffective assistance of counsel. We affirm.

## BACKGROUND

**{2}**     The jury heard undisputed testimony that Defendant was a named target of a search warrant executed by law enforcement at the target residence. The search warrant was issued based on information received from a confidential informant that Defendant and her sister were selling methamphetamine out of the target residence within the past seventy-two hours. At the time of execution, Defendant was the only person at the residence and was seen by officers attempting to enter the southeast bedroom of the house where the contraband was later found.

**{3}**     Defendant agreed to speak with officers after being advised of her *Miranda* rights. She told Officer Rodney Scharmack that "there possibly could be" narcotics in the residence, although she later testified the drugs found in the home were not hers. Defendant also admitted that she had sold methamphetamine in the past to help pay the bills—a statement she denied saying at trial. Defendant identified the southeast bedroom as hers; she said her belongings were in that bedroom although she sometimes stayed in the north bedroom with her daughter. Clothing and pictures, including a photograph of Defendant with her niece and a photograph of her brother, were found in the southeast bedroom. At trial, Defendant denied claiming ownership of the southeast bedroom. Defendant's sister also testified on behalf of the defense. She testified that she lived at the target residence, along with other family members and a friend, but Defendant did not live there. Both Defendant and her sister testified that the southeast bedroom belonged to the friend.

**{4}**     Agent Obed Marte searched the southeast bedroom and found a pink case on the dresser containing methamphetamine and clear empty baggies. Also in the bedroom, officers located marijuana, pipes, and scales. A small amount of marijuana was found on Defendant's person.

**{5}**     The State presented officer testimony explaining that, in determining whether a defendant has an intent to distribute a controlled substance, all the evidence is considered, including the amount of methamphetamine found, whether it is split up, and whether a scale is found. In the opinion of Agent Marte, the amount of methamphetamine alone was consistent with trafficking. Officer Scharmack testified the methamphetamine was found in one quantity, but, in his opinion, it was to be separated into the empty baggies found with the methamphetamine for distribution. Officer Scharmack also testified that digital scales such as the type found in the southeast bedroom are used to measure methamphetamine for distribution.

**{6}**     Defendant was convicted of trafficking methamphetamine, possession of drug paraphernalia, and possession of marijuana. She now appeals.

## DISCUSSION

### I.      Jury Instruction on Constructive Possession

**{7}**      Defendant contends the district court committed fundamental error when it failed, sua sponte, to include optional language from UJI 14-3130 NMRA, the definitional instruction for possession. We disagree.

**{8}**      In this case, the jury was instructed that Defendant's convictions required a finding of possession of methamphetamine, drug paraphernalia, and marijuana. *See* UJI 14-3111 NMRA (possession of a controlled substance with intent to distribute); UJI 14-3107 NMRA (possession of drug paraphernalia); UJI 14-3101 NMRA (possession of marijuana). The methamphetamine, paraphernalia, and a portion of the marijuana were not found on Defendant's person so the State relied on a theory of constructive possession to establish that Defendant had knowledge of the contraband and exercised control over it. *See State v. Barber*, 2004-NMSC-019, ¶ 27, 135 N.M. 621, 92 P.3d 633 ("To prove either actual or constructive possession, the [s]tate had to show [the d]efendant had both knowledge and control of the illegal drugs[.]"). Because possession was at issue, the district court provided the jury with a definitional instruction for possession as follows:

> A person is in possession of a controlled substance or paraphernalia when she knows it is on her person or in her presence, and she exercises control over it.
>
> Even if the controlled substance or paraphernalia is not in her physical presence, she is in possession if she knows where it is, and she exercises control over it.
>
> Two or more people can have possession of a controlled substance or paraphernalia at the same time.

*See* UJI 14-3130; *see also State v. Jimenez*, 2017-NMCA-039, ¶ 55, 392 P.3d 668 ("When the theory of possession is based on constructive possession, the [definitional] instruction provides supplemental language that may be used depending on the evidence." (emphasis omitted) (construing substantially similar UJI 14-130 NMRA)); UJI 14-3130 use notes 1, 2. Defendant argues the district court also should have included, without prompting, the third optional bracketed paragraph from the definitional instruction, reading: "A person's presence in the vicinity of the substance or [her] knowledge of the existence or the location of the substance, is not, by itself, possession." UJI 14-3130. Defendant argues this omission rises to the level of fundamental error because the jury could have convicted based on her "mere presence" at the target house.

**{9}**      Defendant raised no objection at trial to the jury instructions, so we review for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *State v. Benally*, 2001-NMSC-033,

¶ 12, 131 N.M. 258, 34 P.3d 1134. In our review, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted). Even so, "[t]he doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice" that "shocks the conscience" of the court. *Barber*, 2004-NMSC-019, ¶¶ 8, 14; *see also id.* ¶ 17 ("This 'shock the conscience' language has been used both to describe cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused.").

**{10}**   In addressing whether the partial omission of the definitional instruction constituted fundamental error, we find our Supreme Court's decision in *Barber* controlling. Like this case, *Barber* involved drug trafficking and paraphernalia charges where the defendant disputed whether the contraband found in his proximity was his. *Id.* ¶¶ 2-6. But, unlike here, the district court in *Barber* omitted the entire definitional instruction for possession. *Id.* ¶ 7. Notwithstanding this, *Barber* determined that no fundamental error existed. *See id.* ¶ 32. The Court explained that "most definitional instructions merely amplify an element instruction," *id.* ¶ 25, and held that failing to give a definitional instruction on possession did not amount to fundamental error because "the missing definition of possession does not implicate a critical determination akin to a missing elements instruction," *id.* ¶ 26 (internal quotation marks and citation omitted). In reaching this conclusion, the Court "place[d] all the facts and circumstances under close scrutiny to see whether the missing instruction caused such confusion that the jury could have convicted [the d]efendant based upon a deficient understanding of the legal meaning of possession as an essential element of the crime." *Id.* ¶ 25.

**{11}**   Undertaking this analysis here, "the evidence elicited at trial demonstrates far more than" possession "by proximity alone." *Id.* ¶ 28. "Proof of possession in controlled substances cases may be established by evidence of the conduct and actions of a defendant, and by circumstantial evidence connecting [the] defendant with the crime." *Id.* ¶ 27. Other than Defendant's presence, circumstantial evidence, as well as her statements to law enforcement, linked her to the contraband. In particular, Defendant was a target of a search warrant at the target house for trafficking methamphetamine and was present at the house when the warrant was executed. When law enforcement entered the home, Defendant was seen walking toward the southeast bedroom, where the contraband was later found. Defendant told law enforcement that there may be narcotics in the residence and that she previously sold methamphetamine. She also told law enforcement that the southeast bedroom was hers and that her belongings were in the bedroom. Officers found the methamphetamine and baggies on the dresser in the bedroom identified as Defendant's and found scales, pipes, and marijuana in the same room. Marijuana also was found on Defendant's person.

**{12}**   Based on all this evidence, the jury could properly infer that Defendant knew where the contraband was and exercised control over it. *See id.* ¶ 28 (concluding, after examining the evidence, that "the jury could properly infer control from the circumstantial evidence introduced by the state"); *State v. Brietag*, 1989-NMCA-019, ¶

14, 108 N.M. 368, 772 P.2d 898 ("Where drugs are found on premises that a defendant does not exclusively possess, the fact that they are found in close proximity to [her] personal belongings may be a circumstance sufficient to link him with the possession of those drugs."). We conclude "no distinct possibility exists from the evidence that the jury convicted Defendant without finding all the elements," including constructive possession, beyond a reasonable doubt.[1] *See Barber*, 2004-NMSC-019, ¶ 26.

**{13}** Furthermore, we note the district court's instruction properly informed the jury that, in order to convict Defendant, it had to find both that she had knowledge of the controlled substance or paraphernalia and that she exercised control over it. *See id.* ¶ 27; *see also* UJI 14-3130. The additional language now requested by Defendant seems merely to serve as a reminder that, where contraband is not found on the defendant's person, the defendant's presence in the vicinity of the contraband alone, or the defendant's knowledge of the existence or location of the contraband alone, is not enough to find constructive possession—instead, the jury must necessarily find the defendant exercised control over the contraband. *See Jimenez*, 2017-NMCA-039, ¶ 61 ("To instruct the jury that a person's presence in the vicinity of the object or [her] knowledge of the existence or the location of the object is not, by itself, possession, simply restates what the main instruction provides: that one can only be found to be in possession of something if [s]he both knows what the object is *and* exercises control over it." (alterations, internal quotation marks, and citations omitted)); *see also* UJI 14-3130. When viewing the instructions as a whole, we believe this principle was adequately covered in the instructions read to the jury in this case, and we cannot say "a reasonable juror would have been confused or misdirected by" the absence of the omitted language from the definitional instruction. *Benally*, 2001-NMSC-033, ¶ 12 (internal quotation marks and citation omitted).

**{14}** In light of the foregoing, "[w]e are satisfied that, even under a constructive possession theory, it was not fundamental error for the district court to fail to provide the jury with the optional 'proximity' language of [the definitional instruction for possession]." *Jimenez*, 2017-NMCA-039, ¶ 61.

## II. Lesser Included Offense Instruction of Simple Possession

**{15}** Defendant contends the district court should have instructed the jury, sua sponte, on the lesser included offense of simple possession of methamphetamine. Because Defendant did not preserve this issue at trial, we again review for fundamental error. In reviewing this particular claim, we are mindful that a lesser included offense instruction is not a fundamental right, but is rather a procedural safeguard that generally involves a

---

[1]Our conclusion here likewise disposes of Defendant's argument that there was insufficient evidence to support the jury's finding that she exercised constructive possession of the methamphetamine. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 ("In reviewing the sufficiency of the evidence, the reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." (alterations, internal quotation marks, and citation omitted)); *Brietag*, 1989-NMCA-019, ¶ 14 ("The question is whether there exists a rational connection between the location of the drugs and defendant's probable knowledge and control of them.").

strategic choice or a tactical decision by the parties. *State v. Boeglin*, 1987-NMSC-002, ¶ 10, 105 N.M. 247, 731 P.2d 943.

**{16}** In this case, the record reflects that Defendant pursued an "all-or-nothing" trial strategy, in which she argued she did not live at the target residence and therefore did not possess the methamphetamine for any purpose, whether with intent to traffic or otherwise. It appears Defendant made a tactical decision not to dilute her defense with a lesser included offense instruction. *See State v. Baca*, 1997-NMSC-059, ¶¶ 26-27, 124 N.M. 333, 950 P.2d 776 (recognizing that a lesser included offense instruction may dilute the defense under an "all-or-nothing" strategy). Our courts have consistently "declined to apply the doctrine of fundamental error to a defendant's choice of whether to have the jury instructed on lesser included offenses." *State v. Foster*, 1999-NMSC-007, ¶ 54, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. Defendant having "take[n] [her] chances with the jury by waiving instructions on lesser included offenses . . . cannot be heard to complain on appeal if [she] has gambled and lost." *Boeglin*, 1987-NMSC-002, ¶ 15.

**{17}** Defendant, relying on *State v. Baxendale*, 2016-NMCA-048, 370 P.3d 813, nonetheless argues the district court should have given a simple possession instruction without prompting. In *Baxendale*, the district court had omitted entirely instructions going to the defendant's theory of defense. *Id.* ¶ 21. This Court therefore saw fit to remedy the oversight because "a defendant has the fundamental right to present his or her theory of defense to the jury where the evidence supports it." *Id.* ¶ 20. In the instant case, we are satisfied that Defendant's fundamental right to present her theory of defense to the jury was not infringed upon, and we accordingly find *Baxendale* unpersuasive. We conclude the district court's omission of an unrequested lesser included offense instruction does not rise to the level of fundamental error.

### III.    Double Jeopardy

**{18}** Defendant contends her convictions for trafficking and possession of drug paraphernalia violate the double jeopardy guarantee against multiple punishments for the same conduct. "A double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Defendant advances a "double description" challenge, contending "the same conduct results in multiple convictions under different statutes." *Id.* In such cases, we apply the two-part test set forth in *State v. Swafford*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223: (1) whether the conduct is unitary and (2) if so, whether the Legislature intended to punish the offenses separately. *State v. Silvas*, 2015-NMSC-006, ¶¶ 9, 25, 343 P.3d 616. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* ¶ 9 (internal quotation marks and citation omitted).

**{19}** The parties dispute whether the conduct at issue is unitary. Defendant argues her conduct is unitary because some of the items (i.e., the baggies and scales) "that

formed the basis for the paraphernalia conviction are the items used to prove trafficking as well." The State contends there is sufficient indicia of distinctness to separate the conduct supporting the two charges because evidence of intent to distribute went beyond Defendant's possession of the baggies and scales. We need not resolve this dispute, however, because our analysis of the second *Swafford* prong is dispositive in this case. *See State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134 (stating that it is permissible to presume unitary conduct because "our case law separately makes it clear that analysis pursuant to either prong can be dispositive of a *Swafford*-governed double jeopardy challenge"); *see also State v. Ramirez*, 2018-NMSC-003, ¶ 42, 409 P.3d 902 (indicating the defendant bears "the burden imposed by the second prong of the *Swafford* test").

**{20}** "[T]he sole limitation on multiple punishments is legislative intent[.]" *Swafford*, 1991-NMSC-043, ¶ 25. "When, as here, the statutes themselves do not expressly provide for multiple punishments, we begin by applying the rule of statutory construction from *Blockburger v. United States*, 284 U.S. 299 . . . (1932), to determine whether each provision requires proof of a fact that the other does not." *State v. Branch*, 2018-NMCA-031, ¶ 24, 417 P.3d 1141. When dealing with statutes that are "vague and unspecific" or "written with many alternatives," we apply a modified version of the *Blockburger* analysis. *State v. Gutierrez*, 2011-NMSC-024, ¶ 59, 150 N.M. 232, 258 P.3d 1024 (emphasis, internal quotation marks, and citation omitted). Under the modified *Blockburger* analysis, "we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Branch*, 2018-NMCA-031, ¶ 25. "If each statute requires proof of a fact that the other does not, it may be inferred that the Legislature intended to authorize separate punishments under each statute." *Swick*, 2012-NMSC-018, ¶ 13. That inference or "presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *Swafford*, 1991-NMSC-043, ¶ 31.

**{21}** Under the trafficking statute, the State was required to prove that Defendant possessed methamphetamine and intended to transfer it to another—conduct that was not required for possession of drug paraphernalia. *Compare* § 30-31-20(A)(3)(c) (stating the elements of trafficking by possession with intent to distribute), *with* § 30-31-25.1(A) (stating the elements of possession of drug paraphernalia). Under the paraphernalia statute, the State was required to prove that Defendant possessed drug paraphernalia with the intent to engage in one of the enumerated prohibited acts (e.g., compound, convert, produce, process, prepare, test, analyze, pack, repack, inject, ingest, inhale or otherwise introduce into the human body a controlled substance)—conduct that was not required for trafficking. *Compare* § 30-31-25.1(A), *with* § 30-31-20(A)(3)(c). Thus, the statutes withstand *Blockburger*.

**{22}** Defendant nonetheless contends that her convictions violate double jeopardy because the same items—the baggies and scales—were used to prove the paraphernalia charge and also used as proof of Defendant's intent to distribute for the trafficking charge. Defendant cites no authority, however, for the proposition that proof

of one offense cannot also provide some circumstantial evidence of the specific intent of another offense without posing a double jeopardy problem under modified *Blockburger*. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 (providing that we need "not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists"); *see also State v. Urquizo*, 2012-NMCA-113, ¶ 10, 288 P.3d 919 (providing that proof of a specific intent element in one offense precludes that offense from being subsumed in the other offense under modified *Blockburger*). But even if we undertake Defendant's suggested analysis, our conclusion remains the same. Looking to the State's legal theory as set out in the jury instructions, to convict Defendant of possession of paraphernalia, the State was required to prove Defendant possessed "three pipes, clear baggies, *and* two digital scales[.]" (Emphasis added.) The State thus had to prove possession of not just the baggies and scales but also the pipes. Proof of the pipes was not necessary for, or related to, the trafficking charge. And even if the State relied on Defendant's possession of the baggies and scales as evidence that she intended to distribute methamphetamine for purposes of the trafficking charge, Defendant's argument fails to address that her trafficking conviction also required the State to prove that she had methamphetamine in her possession—a fact not necessary for the paraphernalia charge. In sum, one offense is not subsumed within the other, and *Blockburger* gives rise to a presumption that the Legislature intended the offenses to be separately punished. *See Swafford*, 1991-NMSC-043, ¶ 31.

**{23}** To resolve whether this presumption is overcome, "we must turn to traditional means of determining legislative intent: the language, history, and subject of the statutes[,]" and, in particular, we look to the societal interests protected by each statute and the quantum of punishment for the offenses. *Id.* ¶¶ 31-33. Unfortunately, neither party addresses the additional legislative intent considerations set out in *Swafford*, and so we undertake this analysis without input from the parties.

**{24}** But before examining the *Swafford* considerations, we first dispose of Defendant's contention in her reply brief that this Court's decision in *State v. Almeida*, 2008-NMCA-068, 144 N.M. 235, 185 P.3d 1085, establishes the Legislature did not intend to punish drug paraphernalia separately in this case. The paraphernalia charge at issue in *Almeida* was based on a single item—the baggie that held the methamphetamine (which also was the basis of a separate simple possession charge). 2008-NMCA-068, ¶¶ 2-3. Under the particular circumstances of that case, we held "that the [L]egislature did not intend to punish a defendant for possession of a controlled substance and possession of paraphernalia when the paraphernalia consists of *only* a container that is storing *a personal supply* of the charged controlled substance." *Id.* ¶ 21 (emphases added). We took care in explaining just how narrow our holding in *Almeida* was—"acknowledg[ing] that ordinarily, i.e., when the paraphernalia at issue are items usually associated with drugs, the statutes that punish the possession of controlled substances and the possession of drug paraphernalia are intended to punish distinct wrongs." *Id.* ¶ 20 (noting that "two punishments would appear to be permitted when a baggie of drugs is found next to a pipe"). In this case, the drug paraphernalia for which Defendant was convicted was not a container used to store a personal supply of drugs.

Instead, as the State explained in closing, the baggies at issue were the empty baggies found with the methamphetamine, not the baggie containing the methamphetamine, which was in an amount consistent with trafficking. Beyond this, as argued by the State in closing and as required by the jury instructions, Defendant also possessed the scales and pipes—paraphernalia that falls well outside the narrow exception in *Almeida*. Under the circumstances of this case, our holding in *Almeida* does not dictate a result contrary to our analysis herein.

**{25}** We now turn to the legislative intent considerations in *Swafford*. First, as for societal interests, our Supreme Court has explained that "[i]f several statutes are not only usually violated together, but also seem designed to protect the same social interest, the inference becomes strong that the function of the multiple statutes is only to allow alternative means of prosecution." 1991-NMSC-043, ¶ 32. We, however, must take care to "identify the particular evil sought to be addressed by each offense." *Id.* (noting that "the social evils proscribed by different statutes must be construed narrowly"). Construing the social evils narrowly as we must, the evils proscribed by the trafficking statute and the paraphernalia statute diverge.[2] As reflected by the severe punishment that drug traffickers face, *see* § 30-31-20(B), the societal harm targeted by the trafficking statute is considerable—i.e., the facilitation of the illegal drug market and the concomitant perils associated therewith, such as violence. And while some drug paraphernalia, such as empty baggies and digital scales, can be used as implements of drug trafficking, other paraphernalia, such as pipes, proscribe a different evil—i.e., the dangers of drug abuse by enabling entry of controlled substances into the human body. *See* § 30-31-25.1(A). Further, while trafficking and possession of drug paraphernalia may often be committed together, this certainly is not always the case. Thus, our analysis here does not give rise to an inference that "the function of the multiple statutes is only to allow alternative means of prosecution." *Swafford*, 1991-NMSC-043, ¶ 32.

**{26}** Second, we look to the quantum of punishment to detect legislative intent. "Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the [L]egislature did not intend punishment under both statutes." *Id.* ¶ 33. As charged in this case, trafficking by possession of methamphetamine with intent to distribute is a second-degree felony, Section 30-31-20(B), and possession of drug paraphernalia, Section 30-31-25.1(C) (2001), is a misdemeanor. Neither crime, however, is a "base statute" for the other, nor is one "merely an aggravated form of the other." *State v. Fuentes*, 1994-NMCA-158, ¶ 17, 119 N.M. 104, 888 P.2d 986. "The two stand alone, with independent elements and separate [albeit related] policy objectives." *Id.* In sum,

---

2Although we have said that the possession of a controlled substance statute and the possession of drug paraphernalia statute "address the same societal evil: the dangers of drug abuse[,]" *Almeida*, 2008-NMCA-068, ¶ 14, we have subsequently criticized this construction as overly broad, *State v. Clifford*, No. A-1-CA-35465, mem. op. ¶ 23 (N.M. Ct. App. July 24, 2018) (non-precedential) ("Under this construction, all cases involving more than one charge under New Mexico's comprehensive Controlled Substances Act would be vulnerable to double jeopardy scrutiny."). Regardless, we are not bound by *Almeida's* construction here, given we are examining trafficking and not simple possession.

consideration of the indicia of legislative intent does not overcome the *Blockburger* presumption that the Legislature intended separate punishment.

**{27}** We conclude that Defendant's convictions for trafficking and possession of drug paraphernalia do not violate double jeopardy.

## IV.    Ineffective Assistance of Counsel

**{28}** Finally, Defendant contends her convictions are the result of ineffective assistance of counsel because her trial attorney failed to (1) "move to exclude the name of her prior conviction for possession of a controlled substance," and (2) "call her parole officer to establish that she did not live at [the target] residence." To make a prima facie case of ineffective assistance, a defendant must establish that trial counsel's performance fell below the standard of a reasonably competent attorney, and that, as a result, the defense was prejudiced. *State v. Mosley*, 2014-NMCA-094, ¶ 19, 335 P.3d 244.

**{29}** First, Defendant complains that trial counsel should have moved to exclude the name of one of her prior convictions (possession of a controlled substances) and the failure to do so was highly prejudicial. As an initial matter, the authority cited by Defendant in support of such a motion contradicts her position. *See State v. Trejo*, 1991-NMCA-143, ¶¶ 12, 18, 113 N.M. 342, 825 P.2d 1252 (determining that the district court did not abuse its discretion in admitting a prior conviction for an identical charge for impeachment purposes). Moreover, trial counsel's reasons for not filing the motion are not part of the record, and we generally "will not second guess" counsel's decision. *State v. Martinez*, 1996-NMCA-109, ¶ 36, 122 N.M. 476, 927 P.2d 31. But even if trial counsel acted unreasonably in failing to file the motion, Defendant has not established prejudice. During Defendant's direct examination, trial counsel elicited the fact that Defendant had been previously convicted of several felonies and the names of those convictions (forgery, fraud, and possession of a controlled substance). *See* Rule 11-609(A)(1)(b) NMRA (admission of prior felony convictions against a criminal defendant for impeachment purposes). The State, however, did not ask Defendant about the possession conviction during cross-examination, nor does Defendant cite to any other portion of the trial in which the possession conviction was mentioned again. Given this record, Defendant fails to establish there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted).

**{30}** Second, Defendant argues that trial counsel was ineffective because he did not heed her request to call her parole officer to establish that she did not live at the target residence. These facts, however, are not of record, and Defendant thus has failed to meet her burden on this claim. Where an ineffective assistance of counsel claim relies on facts not contained in the record, a defendant may be afforded relief, where appropriate, in a habeas corpus proceeding. *See Martinez*, 1996-NMCA-109, ¶ 25

(expressing a "preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

**{31}** Accordingly, we conclude that Defendant has failed to establish a prima facie case of ineffective assistance of counsel and reject her claim. This decision does not preclude Defendant's ability to pursue habeas corpus or other post-sentence relief with respect to her claim of ineffective assistance of counsel. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517; *see also* Rule 5-802 NMRA (habeas corpus); Rule 5-803 NMRA (petitions for post-sentence relief).

**CONCLUSION**

**{32}** For the foregoing reasons, we affirm.

**{33}** **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**